IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENT CORDERO ) | Case No. 1:18-cv-06863 |
|         Plaintiff, ) | |
|     v. ) | Honorable Jorge L. Alonso |
| DAVID TORRES, ) | Room 1903 |
|         Defendant. ) | |
| _____ ) | |
| DAVID TORRES, ) | |
|         Counter-Plaintiff, ) | |
|     v. ) | |
| VINCENT CORDERO, ) | |
|         Counter-Defendant, ) | |
|         and ) | |
| INVIVO MEDIA GROUP, LLC, ) | |
| INVIVO CONCERTS, LLC, ) | |
|         Nominal Defendants. ) | |

**DEFENDANT DAVID TORRES' AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

NOW COMES Defendant, David Torres ("Torres"), by his attorneys, Ariel Weissberg, Rakesh Khanna and the law firm of Weissberg and Associates, Ltd., and as *Defendant David Torres' Amended Answer*, *Affirmative Defenses, and Counterclaims,* states as follows:

**PARTIES**

1. Plaintiff is a citizen of the United States, who resides in the State of Florida.

**ANSWER: Defendant, having an insufficient knowledge or information to form a belief as to the truth of this averment in paragraph 1 of the Complaint, neither admits nor denies the allegations of paragraph 1 of the Complaint, and demands strict proof thereof.**

2. Upon information and belief, Defendant David Torres ("Defendant") is a citizen of the United States, who resides in the State of Illinois, in the City of Chicago.

**ANSWER: Torres admits the allegations contained in this paragraph.**

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

**ANSWER: Torres admits the allegations contained in this paragraph.**

4. Venue is proper in this district pursuant to § 1391(b)(1) because Defendant's residence is in this district.

**ANSWER: Torres admits the allegations contained in this paragraph.**

## BACKGROUND FACTS

5. Plaintiff and Defendant were each fifty percent members and officers of Invivo Media Group LLC, Invivo Concerts Chicago, LLC and Invivo Concerts, LLC. (collectively, "Invivo").

**ANSWER: Torres admits the allegations contained in this paragraph.**

6. Invivo specialized in live music promotion for the U.S. Latino markets.

**ANSWER: Torres admits the allegations contained in this paragraph.**

7. Defendant and Invivo requested that Plaintiff loan money to Invivo.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, as set forth in Torres' Counterclaims, Plaintiff's self-dealing conduct resulted in financial difficulties for Invivo Media Group, LLC; Invivo Concerts Chicago, LLC; and Invivo Concerts, LLC (hereafter "the Invivo Entities").**

8. Defendant promised Plaintiff that he would be responsible for paying Plaintiff back for the loan.

**ANSWER: Torres denies the allegations contained in this paragraph.**

9. Defendant, as a co-owner of Invivo, both directly and indirectly benefited from the loan.

**ANSWER: Torres admits in part and denies in part the allegations contained in this paragraph. Answering further, Torres admits the Invivo Entities benefited from the loan. Torres denies he personally benefitted from the loan.**

10. Plaintiff loaned Invivo a total of $920,000 between February 10, 2017 and May 19, 2017 (the "Loan").

**ANSWER: Torres denies the allegations contained in this paragraph for lack of knowledge as Cordero was solely responsible for the direct financial management of the Invivo Entities. Answering further, Torres would state Cordero represented to him this was the amount of money Plaintiff loaned the Invivo Entities from February 2017 – May 2017.**

11. Pursuant to a Secured Promissory Note dated May 22, 2017 (the "Note"), Invivo agreed to repay to Plaintiff the Loan by August 1, 2017. A copy of the Note is attached hereto as Exhibit 1.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, Torres states the Note speaks for itself. Torres, for the reasons set forth in his Affirmative Defenses, denies the Note is a valid agreement which binds the Invivo Entities.**

12. Pursuant to the Note, interest accrues on the Loan from August 1, 2017, until the Loan is paid in full, at "the rate equal to LIBOR plus 600 basis points per annum." Ex. 1, §1.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, Torres states the Note speaks for itself. Torres, for the reasons set forth in his Affirmative Defenses, denies the Note is a valid agreement which binds the Invivo Entities.**

13. Pursuant to a Guaranty and Security Agreement made as of May 19, 2017, which Defendant signed in conjunction with the Note (the "Guaranty Agreement"), Defendant "absolutely, unconditionally and irrevocably guarantee[d], as primary obligator" Invivo's obligations under the Note. A copy of the Guaranty Agreement is attached hereto as Exhibit 2.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, Torres states the Guaranty Agreement speaks for itself. Torres, for the reasons set forth in his Affirmative Defenses, denies the Guaranty Agreement is a valid agreement which is binding upon Torres.**

14. On August 15, 2017, Invivo repaid Plaintiff $380,000 of its obligation under the Note.

**ANSWER: Torres admits Invivo paid $380,000.00 to Plaintiff on August 15, 2017, at the sole direction of Cordero. Answering further, Torres denies any characterization of this payment as an "obligation" under a "Note" as he denies the Note is a valid agreement which is binding upon the Invivo Entities.**

15. On May 24, 2018, Invivo repaid Plaintiff an additional $405.20 under the Note.

**ANSWER: Torres admits Invivo paid $405.20 to Plaintiff on May 24, 2018, at the sole direction of Cordero. Answering further, Torres denies any characterization of this payment as an "obligation" under a "Note" because he denies the Note is a valid agreement which is binding upon the Invivo Entities.**

16. Invivo is no longer in business and has no remaining assets.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, as set forth in his Counterclaims, the Invivo Entites are no longer actively pursuing opportunities due to Plaintiff Cordero's breach of fiduciary duty, breach of operating**

**agreement, and tortious interference with business relationships. As of the date of this filing, Invivo Media Group, LLC, appears to have been dissolved. As of the date of this filing Invivo Concerts, LLC and Invivo Concerts Chicago, LLC appear to be active companies.**

17. By letter dated July 10, 2018, Plaintiff, through his counsel, demanded that Defendant immediately pay him $579,098.75 pursuant to the terms of the Guaranty Agreement, representing the remaining balance due and owing on the Loan, including accrued interest through July 1, 2018.

**ANSWER: Torres denies the allegations contained in this paragraph.**

18. Defendant has failed to pay Plaintiff the remaining balance on the Loan.

**ANSWER: Torres denies the allegations contained in this paragraph.**

## COUNT I
### (Enforcement of Guaranty Agreement)

19. Plaintiff realleges and incorporates by reference the allegations set forth above in paragraphs 1 through 18.

**ANSWER: Torres restates and incorporates by reference his responses to paragraphs 1 through 18 above as if fully set forth herein.**

20. Pursuant to Section 2.1 of the Guaranty Agreement, Defendant "absolutely, unconditionally and irrevocably guarantee[d], as primary obligor . . . the full and punctual payment when due" of all obligations under the Note.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, Torres states the Guaranty Agreement speaks for itself. Torres, for the reasons set forth in his Affirmative Defenses, denies the Guaranty Agreement is a valid agreement which is binding upon him.**

21. Pursuant to Section 6.1 of the Guaranty Agreement, Defendant represented that there were funds in excess of the amount of the Loan in one of more accounts for the benefit of Defendant and his family to which Defendant had access to satisfy his obligations under the Guaranty Agreement.

**ANSWER: Torres denies the allegations contained in this paragraph.**

22. Defendant's failure to pay Plaintiff the outstanding amount of $539,594.80 due and owing on the Loan, plus interest thereon, constitutes a breach of the Guaranty Agreement.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, Torres, for the reasons set forth in his Affirmative Defenses, denies the Guaranty Agreement is a valid agreement which is binding upon him.**

23. Pursuant to Section 8.3 of the Guaranty Agreement, Defendant is obligated to pay all fees, costs and expenses incurred by Plaintiff, including reasonable attorneys' fees, in connection with Plaintiff's enforcement of his rights and remedies under the Guaranty Agreement.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, Torres, for the reasons set forth in his Affirmative Defenses, denies the Guaranty Agreement is a valid agreement which is binding upon him.**

24. By reason of the foregoing, Defendant is liable to Plaintiff in the amount of $539,594.80, together with interest thereon pursuant to the terms of the Note, plus his costs and expenses incurred in connection with this action, including his reasonable legal fees.

**ANSWER: Torres denies the allegations contained in this paragraph. Answering further, Torres, for the reasons set forth in his Affirmative Defenses, denies the Guaranty Agreement is a valid agreement which is binding upon him.**

WHEREFORE, Defendant, David Torres, prays that this Court enter an Order dismissing the Complaint, and for such further and other relief as this Court Deems Just and Proper.

## AFFIRMATIVE DEFENSES

25. Torres incorporates his responses to Paragraphs 1 through 24 of the Complaint as if set forth fully herein.

### First Affirmative Defense: No Meeting of the Minds

26. Cordero's claim fails as there was no meeting of the minds regarding the alleged Personal Guaranty.

### Second Affirmative Defense: Absence of Consideration

27. Cordero's claim fails as there was no consideration regarding the alleged Personal Guaranty.

### Third Affirmative Defense: Failure to Pursue the Borrower First

28. Cordero's claim fails as he failed to adequately pursue the Invivo Entities before pursuing Torres.

WHEREFORE, Defendant, David Torres, prays that this Court enter an Order dismissing the Complaint, and for such further and other relief as this Court Deems Just and Proper.

## COUNTERCLAIMS

NOW COMES Counter-Plaintiff, David Torres, and for his Counterclaims against Counter-Defendant, Vincent Cordero, and Nominal Defendants, Invivo Media Group, LLC and Invivo Concerts, LLC, states as follows:

## PARTIES

1. Counter-Plaintiff David Torres is a citizen of the United States and a resident of the state of Illinois.

2. Upon information and belief, Counter-Defendant Vincent Cordero is a citizen of the United States and a resident of the state of Florida.

3. Nominal Defendant, Invivo Media Group, LLC, is a Delaware Limited Liability Company with the principal place of business located in Miami, Florida.

4. Nominal Defendant, Invivo Concerts, LLC, is a Delaware Limited Liability Company with the principal place of business located in Miami, Florida.

## JURISDICTION

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

6. Venue is proper in this district pursuant to § 1391(b)(1) because Counter-Plaintiff's residence is in this district.

## BACKGROUND

7. On June 13, 2016, Plaintiff Vincent Cordero ("Cordero") and Torres formed Invivo Media Group, LLC, in the state of Delaware, to serve as an innovation and business acceleration partner to transform and scale the Latino music industry across mainstream media ("Invivo Media Group").

8. The mission of Invivo Media Group was to provide business and brand amplification to Latino talent across media, music, and sports through live event promotion, talent commercial partnerships, and strategic media consulting.

9. Cordero was appointed Chief Executive Officer of Invivo Media Group. Cordero has significant experience in the entertainment industry specializing in Latino media including experience with HBO Latin America, Fox Deportes, and Univision Chicago.

10. Torres was appointed President of Live Events of Invivo Media Group. Torres brought over twenty-eight (28) years of experience in promoting live music and events to Invivo Media Group, LLC, with noted successes in ticket sales and artist promotion.

11. At the insistence of Cordero, Invivo Media Group formed an advisory board to be populated by individuals with high visibility in the entertainment industry ("Advisory Board"). Cordero as Chief Executive Officer took the initiative to qualify and choose the members of the Advisory Board. Thus, the members of the Advisory Board were direct contacts of Cordero - some of the members chosen performed consulting work for the Invivo Media Group.

12. Without consulting with Torres, Cordero mandated some of the members of the Advisory Board were to be compensated.

13. Invivo Media Group, used a variety of vendors in furtherance of its business ("Vendors"). Most of the Vendors retained by Invivo Media Group were prior contacts of Cordero. Without consulting with Torres, Cordero unilaterally determined the amounts that Invivo Media Group would pay the Vendors.

14. After Invivo Media Group's formation the first live event it promoted was the 2017 U.S. tour of Juan Carlos Ozuna ("Ozuna"). As the promoter Invivo Media Group's responsibilities included among other things, managing talent relations on tour, securing venues, venue relations, and handling concert logistics.

15. Invivo Media Group promoted Ozuna's tour dates including events in New York, Los Angeles, Chicago, Houston, Dallas, Las Vegas, and Orlando among others ("Ozuna Tour"). The promotion of the Ozuna Tour was the primary source of revenue for Invivo Media Group in May 2017.

16. On February 10, 2017, Cordero and Torres formed Invivo Concerts Chicago, LLC, as an affiliate to Invivo Media Group, in the state of Illinois ("Invivo Concerts Chicago"). Cordero and Torres each owned a fifty (50) percent interest in Invivo Concerts Chicago.

17. On May 12, 2017, Cordero and Torres formed Invivo Concerts, LLC, as an affiliate to Invivo Media Group, in the state of Delaware ("Invivo Concerts"). Cordero and Torres each have a fifty (50) percent interest in Invivo Concerts. Hereafter, Invivo Media Group, Invivo Concerts Chicago, and Invivo Concerts shall be collectively referred to as the "Invivo Entities."

18. Pursuant to Cordero and Torres' agreement, the formation of the Invivo Entities was in furtherance of their business of the global promotion of Latino music and events.

19. Under the auspices of building connections and procuring business opportunities for the Invivo Entities, Cordero frequently traveled to network with industry executives and investors for the purpose of creating business opportunities.

20. Frequently, without the knowledge or consent of Torres, these meetings and contacts would evolve into Cordero pursuing business opportunities which were in direct competition with the Invivo Entities and for which the Invivo Entities would receive no compensation. Thus, Cordero engaged in a pattern of self-dealing and usurpation of corporate opportunities of the Invivo Entities.

21. The Invivo Entities suffered financially as a result of Cordero's malfeasance and nonfeasance because instead of Cordero generating revenues and business opportunities, these revenues and business opportunities were diverted by Cordero away from the Invivo Entities.

22. Beginning in February 2017, without the written consent of Torres, Cordero unilaterally began paying monies to Invivo Media Group allegedly in furtherance of Invivo Media Group's business interests. These payments were unauthorized and ultra vires because the

10

Operating Agreement of Invivo Media Group required the prior consent of co-member Torres to any loans from a co-Member, and Torres never agreed to these loans.

23. On May 22, 2017, Cordero attempted to memorialize these payments to the Invivo Media Group, after the fact and in violation of the Operating Agreement with a Promissory Note which was executed in New York, New York, in favor of Cordero. Through this Promissory Note, Cordero attempted to obligate the Invivo Entities.

24. On May 19, 2017, Torres signed an alleged Personal Guaranty ("Personal Guaranty") which attempted to secure recovery from Torres should the Invivo Entities not honor their alleged obligation.

25. As of the date of this filing, Cordero did not make any material attempts to seek payment from the Invivo Entities.

26. In January of 2018, Cordero formed One Road Media Ventures, LLC, to promote Latino talent in Asia in direct competition with the Invivo Entities.

27. Cordero through One Road Media Ventures, LLC, is advancing strategic alliances with individuals with whom he networked in self-dealing and usurpation of corporation opportunities of the Invivo Entities.

## COUNT I
### (Breach of Fiduciary Duty as to Invivo Media Group, LLC)

28. Torres realleges and incorporates by reference the allegations set forth in paragraphs 1 – 27.

29. Torres did not make a demand upon Cordero to bring this derivative action because it would be futile for Torres to make this demand upon Cordero. This demand would be futile because Cordero, as the fifty (50) percent owner of the membership interest of the Invivo Media

Group and as the putative Defendant, would not agree for the Invivo Entities to file an action against Cordero to redress the non-feasance and malfeasance of Cordero. Thus, no demand by Torres upon Cordero is a condition precedent for Torres bringing this derivative action against Cordero.

30. As the Chief Executive Officer, Cordero was responsible for oversight of strategy, partnerships, business development, talent incubation/amplification, sponsorship, consulting services, marketing, legal, finance, technology, human resources, operations and business endeavors.

31. As Co-Member, Chief Executive Officer and a Member of Invivo Media Group's Management Board, Cordero was a fiduciary to Invivo Media Group and owed Invivo Media Group a duty of loyalty and a duty of care.

32. Cordero breached his duty of loyalty to Invivo Media Group, among other ways, by usurping business and financial opportunities belonging to Invivo Media Group.

33. Cordero breached his duty of care to Invivo Media Group, among other ways, by awarding contracts to select Advisory Board Members and Vendors he was connected with at exorbitant expense to Invivo Media Group.

34. Torres is entitled to damages for Cordero's breach of his fiduciary duties of care and loyalty to Invivo Media Group.

WHEREFORE, Counter-Plaintiff, David Torres, prays this Court enter an Order granting judgment in his favor on Count I, and for such further and other relief as this Court Deems Just and Proper.

**COUNT II**
**(Breach of LLC Operating Agreement as to**
**Invivo Media Group, LLC)**

35. Torres realleges and incorporates by reference the allegations set forth in paragraphs 1 – 27.

36. In June 2016, Cordero and Torres executed the "Operating Agreement of Invivo Media Group LLC" ("Operating Agreement"). The Operating Agreement of Invivo Media Group LLC is attached hereto as **Exhibit 1**.

37. From July 2016 to date, Cordero has breached the following provisions of the Operating Agreement:

　　(a)　Failing to obtain Torres' approval for cash advances to Invivo Media Group at the time of the loans in violation of the Operating Agreement. *See* Operating Agreement at 6(c)(vi); and

　　(b)　By organizing and advancing One Road Media Ventures, LLC, which competed directly with Invivo Media Group failed to properly obtain the prior consent of the Management Board, including Torres in violation the Operating Agreement. *See* Operating Agreement at 6(i).

38. Torres fully performed all his obligations under the operating agreement.

39. By virtue of Cordero's breaches of the Operating Agreement Invivo Media Group was damaged.

WHEREFORE, Counter-Plaintiff, David Torres, prays this Court enter an Order granting judgment in his favor on Count II, and for such further and other relief as this Court Deems Just and Proper.

## COUNT III
### (Tortious Interference with Prospective Business Relations as to Invivo Media Group, LLC)

40. Torres realleges and incorporates by reference the allegations set forth in paragraphs 1 – 27.

41. During his time as CEO, Cordero took great pains to network on behalf of the Invivo Entities, when, in actuality, he was seeking out competing opportunities and investment partners for these competing opportunities.

42. Among the business relationships Cordero established in direct competition with the Invivo Entities were, among others,

    (a)    Apple, Inc.;

    (b)    Time Warner, Inc.;

    (c)    Platinum Equity; and

    (d)    Contacts which were in negotiations with the Invivo Entities to bring artists to broader Asian markets which are currently linked to Cordero's newest business endeavor – One Road Media Ventures.

43. These entities and individuals were prospective clients of the Invivo Entities - which would have provided consulting services on their behalf regarding amplification of the Latino entertainment market and live events expertise in the United States and Asia.

44. Invivo Media Group was irreparably damaged by the loss of these prospective business relationships.

WHEREFORE, Counter-Plaintiff, David Torres, prays this Court enter an Order granting judgment in his favor on Count III, and for such further and other relief as this Court Deems Just and Proper.

## COUNT IV
## (Accounting as to Invivo Media Group, LLC)

45. Torres realleges and incorporates by reference the allegations set forth in paragraphs 1 – 27.

46. As set forth in Count I, Cordero has breached his duty of loyalty and duty of care to Invivo Media Group.

47. As set forth in Count II, Cordero has breached the Operating Agreement of Invivo Media Group by (a) unilaterally loaning cash to Invivo Media Group without the written consent of Torres and (b) paying himself back directly out of the Invivo Media Group account without the written consent of Torres.

48. Torres, on behalf of Invivo Media Group, does not have an adequate remedy at law to determine the amounts loaned by, paid to, or misappropriated by Cordero during his time as Chief Executive Officer of Invivo Media Group.

49. Accordingly, Torres, on behalf of Invivo Media Group, is entitled to an equitable accounting from Cordero regarding all transactions taking place at his direction from June 2016 to the present.

WHEREFORE, Counter-Plaintiff, David Torres, prays that this Court enter an Order granting judgment in his favor on Count IV, and for such further and other relief as this Court Deems Just and Proper.

## COUNT V
## (Breach of Fiduciary Duty as to
## Invivo Concerts, LLC)

50. Torres realleges and incorporates by reference the allegations set forth in paragraphs 1 – 27.

51. Torres did not make a demand upon Cordero to bring this derivative action because it would be futile for Torres to make this demand upon Cordero. This demand would be futile because Cordero, as the fifty (50) percent owner of the membership interest of the Invivo Media group and as the putative Defendant would not agree for the Invivo Entities to file an action against Cordero to redress the nonfeasance and malfeasance of Cordero. Thus, no demand by Torres upon Cordero is a condition precedent for Torres bringing this derivative action against Cordero.

52. As the co-owner, Cordero was a fiduciary to Invivo Concerts and owed Invivo Concerts a duty of loyalty.

53. Cordero breached his duty of loyalty to Invivo Concerts, among other ways, by usurping business and financial opportunities belonging to Invivo Concerts.

54. Torres is entitled to damages for Cordero's breach of his fiduciary duty of loyalty to Invivo Concerts.

WHEREFORE, Counter-Plaintiff, David Torres, prays this Court enter an Order granting judgment in his favor on Count V, and for such further and other relief as this Court Deems Just and Proper.

**COUNT VI**
**(Tortious Interference with Prospective Business Relations as to**
**Invivo Concerts, LLC)**

55. Torres realleges and incorporates by reference the allegations set forth in paragraphs 1 – 27.

56. During his time as co-owner of Invivo Concerts, Cordero took great pains to network on behalf of the Invivo Entities, when, in actuality, he was seeking out competing opportunities and investment partners to back them.

57. The business relationships Cordero established in direct competition with the Invivo Entities were, among others,

    (a)    Apple, Inc.;

    (b)    Time Warner, Inc.;

    (c)    Platinum Equity; and

    (d)    Contacts which were in negotiations with the Invivo Entities to bring artists to broader Asian markets which are currently linked to Cordero's newest business endeavor – One Road Media Ventures.

58. These entities and individuals were prospective clients of the Invivo Entities - which would have provided consulting services on their behalf regarding amplification of the Latino entertainment market and live events expertise in the United States and Asia.

59. Invivo Concerts was irreparably damaged by the loss of these prospective business relationships.

WHEREFORE, Counter-Plaintiff, David Torres, prays this Court enter an Order granting judgment in his favor on Count VI, and for such further and other relief as this Court Deems Just and Proper.

## COUNT VII
### (Breach of Contract as to David Torres)

60. Torres realleges and incorporates by reference the allegations set forth in paragraphs 1 – 27.

61. Beginning in 2016, Cordero and Torres formed an oral agreement to build a series of businesses which would focus on the amplification of the Latino entertainment industry across a variety of media and markets.

62. Cordero was to assume the oversight of business operations for the Invivo Entities while Torres was to focus on obtaining talent for and promoting live events.

63. This agreement was subsequently ratified by the parties' course of conduct in forming the Invivo Entities.

64. Torres fully performed pursuant to the terms of the parties' agreement.

65. Cordero breached the parties' agreement in failing to continue in good faith with the business of the Invivo Entities.

66. Torres has been irreparably injured by Cordero's breach of the parties' agreement.

WHEREFORE, Counter-Plaintiff, David Torres, prays this Court enter an Order granting judgment in his favor on Count VII, and for such further and other relief as this Court Deems Just and Proper.

## DEMAND FOR A JURY TRIAL

67. Torres hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38, for all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, having stated his Affirmative Defenses and Counterclaims, Defendant/Counter-Plaintiff, David Torres, prays for relief as follows:

1. Plaintiff Cordero should be denied the relief requested;

2. For judgment on Defendant/Counter-Plaintiff Torres' Counterclaims;

3. For attorneys' fees and costs to the extent applicable; and

4. For such other relief as the Court deems just and proper.

                                          **DAVID TORRES**,

                                          Defendant/Counter-Plaintiff

                                          By:  /s/ *Ariel Weissberg*
                                                          One of his attorneys

Ariel Weissberg, Esq. (No. 3125591)
Lindsey Purdy, Esq. (No. 6325145)
Weissberg and Associates, Ltd.
401 S. LaSalle St., Suite 403
Chicago, Illinois 60605
T. 312-663-0004
Email: ariel@weissberglaw.com

## **CERTIFICATE OF SERVICE**

  I, Ariel Weissberg, an attorney, certify that on December 14, 2018, I caused to be filed **DEFENDANT DAVID TORRES' AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**. Notice of this filing was sent to all parties registered to receive notice in this case by electronic transmission through the court's CM/ECF system.


       /s/ Ariel Weissberg
       Ariel Weissberg