# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VINCENT CORDERO, ) | |
|     Plaintiff, ) | Case No. 18-cv-6863 |
| ) | |
| v. ) | Judge Jorge L. Alonso |
| ) | |
| DAVID TORRES, ) | |
|     Defendant. ) | |
| ) | |
| DAVID TORRES, ) | |
|     Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VINCENT CORDERO, ) | |
|     Counter-Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| INVIVO MEDIA GROUP, LLC, ) | |
| INVIVO CONCERTS, LLC, ) | |
|     Nominal Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/counter-defendant Vincent Cordero and defendant/counter-plaintiff David Torres are former business partners. Together, they owned several businesses specializing in live music promotion for U.S. Latino markets. In 2017, Cordero and Torres had a dispute over money. Relations soon soured, and this suit followed.

Before the Court is Cordero's motion to dismiss Torres's amended counterclaims and to strike affirmative defenses pursuant to Federal Rules of Civil Procedure 12(b)(1), 23.1, 12(b)(6), and 12(f). For the reasons set forth below, the motion [45] is granted in part and denied in part. Additionally, Cordero shall file a supplemental statement of federal jurisdiction properly alleging a basis for the Court's jurisdiction by July 31, 2019. Status set for August 1, 2019 at 9:30 a.m.

## BACKGROUND

Plaintiff/counter-defendant Vincent Cordero brings a one-count complaint against defendant/counter-plaintiff David Torres, alleging a claim of enforcement of guaranty agreement. Cordero resides in Florida, and Torres resides in Illinois. They are each fifty percent members and officers of Invivo Media Group, LLC, Invivo Concerts Chicago, LLC, and Invivo Concerts, LLC (the "Invivo Entities").

Cordero alleges that, from February 2017 through May 2017, he loaned the Invivo Entities approximately $920,000. According to Cordero, Torres promised him that he would repay the loan to Cordero. Cordero points to a Secured Promissory Note (the "Note"), dated May 22, 2017 wherein the Invivo Entities agreed to repay to Cordero the loan by August 1, 2017. (Dkt. 1-1.) Cordero also points to a Guaranty and Security Agreement (the "Guaranty Agreement"), dated May 19, 2017. (Dkt. 1-2.) Despite the promise of repayment, Cordero says that Torres has only made partial payment on the loan. Cordero now seeks to recover the outstanding amount of the loan plus interest, costs, and fees.

Torres disputes many of these allegations, including whether the Note and the Guaranty Agreement constitute valid agreements. Torres has filed an amended answer, seven counterclaims, and three affirmative defenses. Torres has also added Invivo Media Group, LLC and Invivo Concerts, LLC as nominal defendants. For his counterclaims, Torres alleges: (1) breach of fiduciary duty as to Invivo Media Group, LLC; (2) breach of LLC Operating Agreement as to Invivo Media Group, LLC; (3) tortious interference with prospective business relations as to Invivo Media Group, LLC; (4) accounting as to Invivo Media Group, LLC; (5) breach of fiduciary duty as to Invivo Concerts, LLC; (6) tortious interference with prospective business relations as to Invivo Concerts, LLC; and (7) breach of contract as to David Torres. As for his affirmative

defenses, Torres alleges: (1) no meeting of the minds; (2) absence of consideration; and (3) failure to pursue the borrower first.

Cordero moves to dismiss the counterclaims under Rules 12(b)(1), 23.1, and 12(b)(6). He also moves to strike the affirmative defenses under Rule 12(f). The Court will address each in turn.

## DISCUSSION

**I.     Rule 12(b)(1) – Jurisdiction**

A district court's "first duty in every lawsuit" is to establish the existence of subject-matter jurisdiction. *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005); *Johnson v. Wattenberger*, 361 F.3d 991, 992 (7th Cir. 2004). In every case, a federal court must first assure itself that it has jurisdiction over the claims before it. *Scott Air Force Base Prop., LLC v. Cty of St. Clair Ill.*, 548 F.3d 516, 520 (7th Cir. 2008). "[F]ederal courts are obligated to inquire into the existence of jurisdiction *sua sponte*." *Evergreen Square of Cudahy v. Wisc. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015) (*citing Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004)).

**A.     Plaintiff's Complaint**

As an initial matter, the Court notes that Cordero has failed to adequately allege diversity jurisdiction in his complaint.[1] Cordero asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1332 on the grounds that the amount in controversy exceeds $75,000.00 and the case is between citizens of different states. Cordero states that he is "a citizen of the United States, who resides in the State of Florida," and that Torres "is a citizen of the United States, who resides in the State of

---

[1] The Court recognizes that the parties do not dispute jurisdiction and, therefore, will not dismiss the Complaint at this time.

3

Illinois, City of Chicago." (Dkt. 1, ¶¶ 1-2.) However, citizenship of an individual is determined by domicile, not residence. *See Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (allegation of "residence" is deficient). In light of the jurisdictional deficiencies in Cordero's complaint, Cordero is given leave to file a supplemental statement of federal jurisdiction properly alleging a basis for the Court's jurisdiction by July 26, 2019.

### B. Counterclaims

Cordero moves to dismiss pursuant to Cordero's counterclaims pursuant to Rule 12(b)(1), arguing that the Court lacks jurisdiction over the counterclaims. Cordero contends that the addition of Invivo Media Group, LLC and Invivo Concerts, LLC as parties to the derivative counterclaims destroys diversity for purposes of subject-matter jurisdiction.

When considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, a district court accepts as true all well-pleaded factual allegations and draws reasonable inferences from the allegations in favor of the plaintiff. *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 604 (7th Cir. 2008) (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)). The court may also look beyond the allegations of the complaint and consider affidavits and other documentary evidence to determine whether subject-matter jurisdiction exists. *Capitol Leasing*, 999 F.2d at 191. To establish diversity jurisdiction, the party asserting jurisdiction must, among other things, allege the citizenship of each party. "[T]he citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Thus, the party must include allegations identifying its members and the citizenship of each member. In addition, "if those members have members, [it must identify and allege] the citizenship of those members as well." *Thomas*, 487 F.3d at 534.

Torres essentially concedes this argument and generally asks this Court to look beyond the technicalities of derivative actions for limited liability companies and deny Cordero's jurisdictional argument. While diversity may have been destroyed when Torres added the two LLC defendants, the Court may still exercise supplemental jurisdiction over Torres's counterclaims. Section 1367(a) of the United States Code provides,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). This Court may "maintain supplemental jurisdiction over counterclaims, whether compulsory or permissive, so long as the counterclaims are so related to the original claims." *Direct v. Edwards*, 293 F. Supp. 2d 873, 878 (N.D. Ind. Nov. 17, 2003). Given that the counterclaims are related to the original claim and that the interests of judicial economy would be served here, the Court may (and does) exercise supplemental jurisdiction over the counterclaims. *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (federal court should consider and weigh the values of judicial economy, convenience, fairness, and comity when deciding whether to exercise supplemental jurisdiction).

## II.     Rule 23.1(b) – Derivative Counterclaims

Federal Rule of Civil Procedure 23.1 requires a complaint for a derivative action to be verified and to "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b).

5

### A. Whether the Seventh Counterclaim is Direct or Derivative

Torres says that the first six counterclaims are derivative and that the seventh counterclaim, alleging breach of oral contract against Cordero, is direct. Cordero takes issue with Torres's classification of the seventh counterclaim and argues that it, too, is derivative.

The law of the state where an LLC was formed applies when determining whether a claim is direct or derivative. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). "Delaware courts have held that case law governing corporate derivative suits is applicable to derivative suits brought on behalf of an LLC." *Kroupa v. Garbus*, 583 F. Supp. 2d 949, 952 (N.D. Ill. 2008). Because the named LLCs, Invivo Media Group, LLC and Invivo Concerts, LLC, were formed in Delaware, Delaware law applies here.

Under Delaware law, to determine whether a claim is direct or derivative, "the court should look to the nature of the wrong and to whom the relief should go." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). In other words, the Court must consider (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually). *In re Syncor Int'l Corp. S'holders Litig.*, 857 A.2d 994, 996 (Del. Ch. 2004). The court must "look at the nature of the wrong alleged, not merely at the form of words used in the complaint." *Id.* at 997. Even if a claim is pleaded as a direct claim, it may be derivative in the context of all of the facts in the complaint. *Id.* (quoting *Dieterich v. Harrer*, 857 A.2d 1017, 2004 (Del. Ch. 2004)). To demonstrate that a claim is direct, "a plaintiff must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1260 (Del. 2016) (quoting *Tooley*, 845 A.2d at 1039) (internal quotations omitted).

In his seventh counterclaim, Torres alleges that he formed with Cordero an oral agreement to build a series of businesses that would amplify the Latino entertainment industry. Torres alleges that he and Cordero ratified the agreement by forming the Invivo Entities. According to Torres, Cordero breached the agreement by "failing to continue in good faith with the business of the Invivo Entities." (Dkt. 21, Countercl., ¶ 65.) As a result, Torres says that he has been irreparably injured.

To determine whether the seventh counterclaim is direct or derivative, the Court must first determine, under the first prong of the *Tooley* test, who suffered the alleged harm. Torres alleges that Cordero breached the oral agreement when he allegedly stopped acting in good faith with the Invivo Entities. Torres does not allege harm stemming from an individual right that is separate from the LLCs. That is, he does not allege that he can prevail without showing an injury to the LLCs. Instead, Cordero's alleged misconduct is directly related to the LLCs. *See In re Syncor Int'l Corp.*, 857 A.2d at 997 (finding claim to be derivative rather than direct because "all of [the] alleged misconduct was in connection with Syncor's core business activities and, if proven, would involve a breach of the duty of loyalty owed to Syncor."); *see also Metro Comm. Corp. BVI v. Advanced Mobilecomm Tech., Inc.*, 854 A.2d 121, 168 (Del. Ch. 2004) (foreign payoffs and kickbacks preventing plaintiff from realizing profit constituted an injury to the LLC and was therefore derivative rather than individual in nature).

Under the second prong of *Tooley*, the Court must consider who would receive the benefit or recovery. In this case, any benefit or recovery would go to the LLCs, not Torres. Although Torres may later benefit from any LLCs profits, these benefits would flow from and through the LLCs. This form of recovery indicates that the seventh counterclaim is derivative. *See El Paso*

7

*Pipeline*, 152 A.3d at 1264 (claim is derivative where any recovery must flow solely to partnership).

Accordingly, the Court finds Torres's seventh counterclaim to be derivative. Having found that all of Torres's counterclaims are derivative, the Court will next turn to whether pre-suit demand is excused.

B.   **Demand Futility**

Cordero moves to dismiss the derivative counterclaims, arguing that Torres did not verify the derivative counterclaims and that Torres has failed to plead demand futility with particularity. In response, Torres seeks leave to amend to include the necessary verification. He also says that he did not make a demand before filing his counterclaims, arguing that making such a demand would have been futile.

"In contrast to a motion to dismiss pursuant to Rule 12(b)(6), a Rule 23.1 motion to dismiss for failure to make a demand is not intended to test the legal sufficiency of the plaintiffs' substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *In re Discover Fin. Servs. Derivative Litig.*, No. 12 C 6436, 2015 WL 1399282, at *2 (N.D. Ill. Mar. 23, 2015) (citations omitted). While federal law governs the degree of detail a plaintiff must provide in its complaint, state law determines whether "the content of the statement suffices to permit the shareholder to proceed with the litigation." *Westmoreland Cty. Emp. Ret. Sys. v. Parkinson*, 727 F.3d 719, 722, 725 (7th Cir. 2013). In cases involving derivative actions, the law of the state of incorporation controls and governs the issue of demand futility. *See In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 803 (7th Cir. 2003). The parties agree that Delaware law governs because the two LLCs named in the counterclaims, Invivo Media Group,

LLC and Invivo Concerts, LLC, were formed in Delaware. (*See* dkt. 27, pg. 11; dkt. 40, pgs. 11-12.)

Under Delaware law, there are two tests for evaluating demand futility: the *Rales* test, from *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), and the *Aronson* test, from *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984). *See Oakland Cty. Emp. Ret. Sys. v. Massaro*, 772 F. Supp. 2d 973, 976 (N.D. Ill. Mar. 22, 2011). The *Rales* test "applies where the subject of a derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). Under this test, a party "must plead particularized factual allegations that create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934 (internal quotation marks omitted). The *Aronson* test "applies to claims involving a contested transaction, *i.e.*, where it is alleged that the directors made a conscious business decision in breach of their fiduciary duties." *Wood*, 953 A.2d at 140. Under this test, a plaintiff must "allege particularized facts creating a reason to doubt that (1) the directors are disinterested and independent or that (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id*. (internal brackets and quotation marks omitted) (citing *Aronson*, 473 A.2d at 814). "The test is disjunctive: if either prong is satisfied, demand is excused." *Westmoreland*, 727 F.3d at 725 (internal quotation marks and brackets omitted) (quoting *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000)). Under either test, a plaintiff must make a sufficient "threshold showing, through the allegation of particularized facts," that his claims have "some merit." *Id*. at 729 (citing *Rales*, 634 A.2d at 934). The "mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either

9

independence or disinterestedness of directors," rather, it must be a "substantial likelihood" of liability. *Rales*, 634 A.2d at 936 (citing *Aronson*, 473 A.2d at 815).

The parties appear to dispute whether the *Rales* test or the *Aronson* test applies. While Cordero definitively says the *Rales* test applies, Torres's position is not as clear. Torres says that Cordero has misapplied the *Rales* test and then goes on to cite cases applying the *Aronson* test. Because Torres is not challenging a Board approved transaction, the Court will apply the *Rales* test.

Torres contends that he has stated with particularity why pre-suit demand would have been futile. In his counterclaim, he states,

> Torres did not make a demand upon Cordero to bring this derivative action because it would be futile for Torres to make this demand upon Cordero. This demand would be futile because Cordero, as the fifty (50) percent owner of the membership interest of the Invivo Media Group and as the putative Defendant, would not agree for the Invivo Entities to file an action against Cordero to redress the non-feasance and malfeasance of Cordero. Thus, no demand by Torres upon Cordero is a condition precedent for Torres bringing this derivative action against Cordero.

(Dkt. 21, Countercl., ¶¶ 29, 51.) Torres further alleges that Cordero would frequently pursue business opportunities that directly competed with the Invivo Entities, which caused the Invivo Entities to financially suffer. Cordero responds that Torres's allegations are conclusory, do not satisfy the applicable heightened pleading standard, and fail to show any likelihood of liability against Cordero, let alone a substantial likelihood of liability.

Under *Rales*, Torres must plead, with particularity, facts that create a reasonable doubt that Cordero could have acted independently and disinterestedly in responding to a demand. *Rales*, 634 A.2d at 934. Here, Torres has failed to meet this pleading requirement. Torres's assertion that demand would have been futile because Cordero is a 50% owner of the Invivo Entities is not enough. *Id*. at 936 (mere threat of personal liability is not enough; a plaintiff must show a

substantial likelihood of personal liability.) Torres's additional allegations, regarding Cordero's alleged business pursuits and his lack of disinterest, are not particularized. While Torres says that Cordero met with other individuals at the expense of the Invivo Entities to pursue other business opportunities, Torres does not indicate who Cordero allegedly met with, what those business opportunities were, and/or how the Invivo Entities allegedly suffered as a result. Moreover, Torres does not allege or show that Cordero would face a substantial likelihood of personal liability for the misconduct alleged in the counterclaims. Because Torres has not made the requisite showing that pre-suit demand would have been futile and because Torres did not verify his counterclaims, his derivative counterclaims are dismissed without prejudice.

Given that the counterclaims have been dismissed, the Court need not address Cordero's remaining arguments under Rule 12(b)(6).

## III. Affirmative Defenses

Cordero next argues that Torres' affirmative defenses should be stricken because they are conclusory and therefore insufficient under the pleading standard of the Federal Rules of Civil Procedure. With respect to *claims*, the federal rules require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Because of that language in Rule 8(a)(2), the Supreme Court has held that a plaintiff must allege *claims* plausibly in order to survive a motion to dismiss. *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007) ("The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'"). Defenses are different, however. Nothing in Rule 8(b)(1)(A) requires defenses to be plausible or that a defendant "show [it is] entitled to relief," as 8(a)(2) requires of claims. All a defendant must do is "state in short and plain

11

terms its defenses." Fed. R. Civ. Pro. 8(b)(1)(A). Torres has done so here, so the motion to strike is denied. *See LaPorte v. Bureau Veritas North Amer., Inc.*, No. 12 C 9543, 2013 WL 250657 (N.D. Ill. Jan. 18, 2013) (denying motion to strike affirmative defenses).

## CONCLUSION

For the reasons stated above, plaintiff/counter-defendant Vincent Cordero's motion to dismiss defendant/counter-plaintiff David Torres's counterclaims and strike affirmative defenses is granted in part and denied in part. Plaintiff/counter-defendant shall file a supplemental jurisdictional statement by July 31, 2019. Status set for August 1, 2019 at 9:30 a.m.

**SO ORDERED.**                                        **ENTERED: July 22, 2019**

                                                                          **HON. JORGE ALONSO**
                                                                          **United States District Judge**